OSTHEIMER *v.* MCNUTT

[No. 17,430.  Filed April 26, 1946.  Rehearing Denied May 21, 1946.  Transfer Denied June 17, 1946.]

*Leo X. Smith,* and *Albert Stump,* both of Indianapolis, for appellant.

*Victor R. Jose, Jr.,* of Indianapolis, for appellee.

CRUMPACKER, J.—This action was brought by the appellant in the Marion Superior Court and through it she seeks to recover from the appellee, as an individual, the sum of $11,577.00 which she claims is her property and which she turned over to the appellee, as the executor of the estate of Emily Collison, deceased, now pending in the Marion Probate Court, under the mistaken impression that said money was legally an asset of said estate and which was accepted by the appellee, as such executor, under a like erroneous impression. The Marion Superior Court concluded that, even so, it had no jurisdiction of the subject matter of the litigation because it considered the money involved to be in the exclusive custody of the Marion Probate Court and entered judgment abating the action.

The appellant contends that her suit was properly instituted in the Marion Superior Court against the appellee in his personal character because (1) the things or occurrences of which she complains happened after the death of Emily Collison and do not constitute a claim against her estate within the meaning of § 6-1001, Burns' 1933, requiring claims to be filed in the office of the clerk in which said estate is pending; (2) she cannot sue the appellee in his representative capacity because the estate which he represents is not chargeable with his unlawful acts; and (3) as the money she seeks to recover is not an asset of the Collison estate and came into the appellee's hands as the executor thereof under the mistaken impression that it was such an asset, the appellee holds said money in his personal character and not as an officer of the Marion Probate

Court and therefore the subject matter of this litigation is not in *custodia legis*.

We agree with the appellant in her first contention. The cause of action she asserts is not a claim against the estate of Emily Collison, deceased, and the procedure for its enforcement is not controlled by § 6-1001, Burns' 1933. In construing this statute the Supreme Court said in *Williams* v. *Williams, Admr.* (1940), 217 Ind. 581, 29 N. E. (2d) 557, that the term "any claim" as used therein "is generally construed to mean debts or demands of a pecuniary nature which could have been enforced against a decedent in his lifetime and could have been reduced to a simple money judgment." The facts constituting the appellant's cause of action occurred after the death of Emily Collison and obviously such action could not have been enforced against her in her lifetime.

In reference to the appellant's second contention it may be said that it is the general rule that an estate cannot be held liable for a tort committed by the trustee, executor, or administrator thereof. *Hankins, Adm'r.* v. *Kimball* (1877), 57 Ind. 42; *Evans* v. *Hardy, Adm'r.* (1881), 76 Ind. 527; *Berghoff* v. *McDonald* (1882), 87 Ind. 549; *Riley* v. *Kepler* (1884), 94 Ind. 308; 34 C. J. S. Executors and Administrators, § 713, p. 699. When such representative "commits a tort he steps out of the line of his duty; in other words, in so far as he commits a wrong, he does not represent the estate, and therefore it should not be held liable." Note 44 A. L. R. 639. However, it was said in *Isbell* v. *Heiny, Administrator* (1941), 218 Ind. 579, 33 N. E. (2d) 106, that the decisions in this state indicate "that an estate is sometimes answerable for the torts of the executor or administrator and the general rule has been and possibly should be relaxed

in the interest of avoiding circuity of action." Whether the general rule is relaxed in the present case and the appellant's action should have been brought against the appellee in his representative capacity, we find it neither proper nor essential to decide because the basic problem involved in this controversy is a possible conflict of jurisdiction over the same property between two co-ordinate courts. Even though this action were brought against the appellee in his representative capacity in the Marion Superior Court, that court would still lack jurisdiction if the money involved were already in *custodia legis* when the action was begun.

This brings us to a consideration of the appellant's third contention that in the administration of a decedent's estate no property can be said to be in *custodia legis* when it does not belong to such estate and its possession is wrongfully obtained or withheld by the executor thereof.

In support of this contention the appellant relies chiefly upon five early Indiana cases, to-wit: *Rodman* v. *Rodman, Administrators* (1876), 54 Ind. 444; *Hankins, Adm'r* v. *Kimball, supra; Rose* v. *Cash* (1877), 58 Ind. 278; *Hendrix* v. *Hendrix, Executor* (1870), 65 Ind. 329; *Evans* v. *Hardy, Adm'r., supra.* These cases all hold that when an administrator or executor unlawfully comes into possession of personal property belonging to a third person, or unlawfully withholds possession thereof, his possession is that of an individual and the owner's remedy sounds in tort and lies against such administrator or executor in his personal character. None of these decisions specifically discuss the doctrine of *custodia legis* although they clearly indicate that the property in controversy was not so held. In both the Rodman and Evans cases the question was presented, without objection, upon a claim filed in the office of the

clerk of the court in which the estate was pending and subsequently transferred to the trial docket as provided by § 6-1001, Burns' 1933. Thus the question of the right of a co-ordinate court to determine the controversy was not involved.

We find a discussion of the question of jurisdictional conflict between co-ordinate courts, under circumstances somewhat similar to those at bar, in the case of *Martz v. Putnam* (1889), 117 Ind. 392, 20 N. E. 270. William B. Dickson & Company, being insolvent, made a voluntary assignment in the Marion Circuit Court for the benefit of its creditors and Martz was duly appointed assignee of such insolvent estate. Putnam sued Martz individually in the Marion Superior Court to recover possession of certain personal property he claimed to own and which Martz unlawfully withheld. Martz answered to the effect that he came into possession of the disputed property as an asset of the insolvent estate of William B. Dickson & Company and therefore he should be sued in his representative capacity in the Marion Circuit Court where such estate was pending. The court held such position untenable because Putnam owned the property and had the right to its possession and the detention thereof by Martz was wrongful. He could not be heard to say that he acted unlawfully in his capacity as assignee and thus avoid being sued as an individual in the Marion Superior Court.

The above cases apparently leave the appellant free to sue the appellee as an individual in the forum of her choice. However, in two recent decisions, the Supreme Court has treated the fact that an administrator or executor is wrongfully in possession of another's property as unimportant in determining whether such property is in *custodia legis*. *State ex rel. Tuell v. Shelby Circuit Court* (1939), 216 Ind. 231, 23 N. E. (2d) 425;

*Isbell* v. *Heiny, Administrator, supra.* In the Isbell case the court was called upon to determine whether a replevin suit against an administrator will lie in a court other than that in which the estate he represents is pending. Replevin sounds in tort and when brought against an administrator for the recovery of personal property in his possession necessarily charges that such possession is unlawful. Under the early decisions such possession is held to be in the personal character of the administrator, with which the estate has nothing to do, but nevertheless the court said "the remedy for his wrongful possession as such administrator is by proceedings on the probate side of the court of his appointment because his possesion is the possesion of that court which aught not to be hampered in the administration of the estate by conflicting jurisdiction of another court wherein contrary decision might be made."

In *State ex rel.* v. *Shelby Circuit Court, supra,* the facts disclose that the administrator of the estate of Ray S. Tuell, deceased, by appointment of the Marion Probate Court, took possession of certain property in Shelby County alleged to belong to a partnership composed òf one Lowell G. Ash and the said Ray S. Tuell in his lifetime. Thereafter the said Ash, as the surviving partner, filed his affidavit in the Shelby Circuit Court for an order authorizing him to close out the partnership business under the provisions of the statute governing such matters. The order was granted and thus a conflict of jurisdiction between the Marion Probate Court and the Shelby Circuit Court was set up. Under the law of this state Ash, as the surviving partner, had the right to administer the assets of the firm and in that sense the possession of such assets by the administrator of the Tuell estate was unlawful. Nevertheless, the court held: "Property in the hands

of an administrator or an executor is *in Custodia Legis.* The possession of such administrator is the possession by the Court. *Hudson, etc.* v. *Wilber, Saginaw Circuit Judge,* 114 Mich. 116, and cases therein cited. The law does not permit one Court to assume control over the representative of another Court or the property confided to his charge. . . . When a Court obtains jurisdiction over, and has the custody of property by an agent appointed by it, such as a receiver, a guardian, trustee, administrator, or executor, no other Court of co-ordinate jurisdiction has the power to interfere with the first Court's possession. This must be true to avoid conflict of jurisdiction between different Courts of co-ordinate jurisdiction."

Thus it is apparent that the latest decisions of the Supreme Court as to when property, involved in the administration of a decedent's estate, is in *custodia legis* sustain the conclusions reached by the court below and constitute ruling precedents which we must necessarily follow.

The questions we have discussed arise on legal and factual issues joined on the appellee's answer in abatement of the appellant's cause. Over the appellant's objection the court permitted the appellee to file such answer after he had appeared generally in the case. This the appellant contends was error. As the answer in abatement went to the jurisdiction of the court over the subject matter of the litigation the question was timely at any stage of the proceedings and could not be foreclosed by a general appearance.

Judgment affirmed.

Royse, P. J., not participating.

NOTE.—Reported in 66 N. E. (2d) 142.