Jeff CARDWELL and Les Hardin, d/b/a Hickory Estates Construction, A Hardin–Cardwell Partnership, Appellants–Plaintiffs,

v.

ESTATE OF James M. KIRKENDALL, Deceased, and Jackie Kirkendall and Jill A. Cotton, Personal Representatives of the Estate of James M. Kirkendall, Deceased, Appellees–Defendants.

No. 34A02–9811–CV–911.

Court of Appeals of Indiana.

June 10, 1999.

Mark A. Dabrowski, Dabrowski & Huston, Kokomo, Indiana, Attorney for Appellant.

J. Conrad Maugans, Bayliff Harrigan Cord & Maugans, P.C., Kokomo, Indiana, Attorney for Appellee.

## OPINION

KIRSCH, Judge

Jeff Cardwell and Les Hardin, d/b/a Hickory Estates Construction, A Hardin–Cardwell Partnership ("Hardin–Cardwell"), filed a claim against the Estate of James M. Kirkendall, Deceased, and the personal representatives of said estate ("Estate") more than five months after the date of first published notice to creditors but less than one year after the decedent's death. Hardin–Cardwell appeals the trial court's order granting summary judgment in favor of the Estate for failure to comply with the time provisions of IC 29–1–14–1.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

The facts in the light most favorable to the nonmovant establish that on October 1, 1996, James M. Kirkendall and Hardin–Cardwell entered into a written contract whereby Hardin–Cardwell agreed to sell Kirkendall a parcel of real estate located in Howard County in exchange for Kirkendall's payment of $210,000.00 in cash and the deeds to two vacant lots located elsewhere in Howard County. Hardin–Cardwell alleges Kirkendall made express and implied representations that the two lots in question were suitable for construction of single family residential dwellings.

Kirkendall died on December 7, 1996, subsequent to the signing of the purchase agreement but prior to the completion of the transaction. Administration of Kirkendall's estate was opened on January 24, 1997. The personal representatives of the Estate and Hardin–Cardwell closed the real estate transaction on January 30, 1997, and the two lots were conveyed by Personal Representatives' Deed to Hardin–Cardwell. During the

closing, the attorney for the Estate advised Hardin–Cardwell that it "could not do anything" with the lots during the five-month period following the opening of the Estate. *Record* at 40.

Based upon the Estate attorney's representation, Hardin–Cardwell did nothing to the two lots until more than five months had passed from the first publication of notice to creditors, and then commenced preparations for the construction of a "spec" home on each of the lots. In the course of such preparations, soil testing revealed that neither of the lots was suitable for construction of a single family residence. Consequently, Hardin–Cardwell filed a claim against the Estate in Howard County probate court, the Estate denied the claim, and it was transferred to the civil docket.

Hardin–Cardwell then filed a complaint in the Howard Superior Court on December 3, 1997, alleging failure of consideration, unjust enrichment, and fraud. In response, the Estate filed a Motion for Summary Judgment on the grounds that Hardin–Cardwell's claim against the Estate had been filed after the five-month period prescribed by IC 29–1–14–1 and was therefore barred. The trial court granted summary judgment in favor of the Estate. Hardin–Cardwell now appeals.

## DECISION AND DISCUSSION[1]

■ The initial matter for our consideration is whether Hardin–Cardwell's claim against the Estate is of such nature as to be governed by IC 29–1–14–1. This statute provides:

"(a) Except as provided in IC 29–1–7–7, all claims against a decedent's estate, other than expenses of administration and claims of the United States, the state, or a subdivision of the state, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, shall be forever barred against the estate, the personal representative, the heirs, devisees, and legatees of

1. Our discussion here is handicapped by the failure of the parties to include any of the probate pleadings in the Record filed with this court. In the absence of such pleadings, we were unable to determine whether the decedent had executed a

will, what powers the personal representatives possessed, or whether the probate court had even approved the personal representatives' transfer of real estate to Hardin–Cardwell.

the decedent, unless filed with the court in which such estate is being administered within:

    (1) five (5) months after the date of the first published notice to creditors.

    . . . .

    (d) All claims barrable under subsection (a) shall be barred if not filed within one (1) year after the death of the decedent."

One important purpose of IC 29–1–14–1 is to establish which types of the statutorily defined claims fall within the five-month or one-year time limitation. *Kitchen v. Estate of Blue,* 498 N.E.2d 41, 47 (Ind.Ct.App.1986). The Probate Code defines "claim" to include the "liabilities of a decedent which survive, whether arising in contract or in tort or otherwise, funeral expenses, the expense of a tombstone, expenses of administration, and all estate and inheritance taxes." IC 29–1–1–3. A claim, as that term is used in IC 29–1–14–1, has a more restrictive meaning, and refers to "a debt or demand of a pecuniary nature which could have been enforced against the decedent *in his lifetime* and could have been reduced to a simple money judgment." *Matter of Williams' Estate,* 398 N.E.2d 1368, 1370 (Ind.Ct.App.1980) (quoting *Vonderahe v. Ortman,* 128 Ind.App. 381, 387, 146 N.E.2d 822, 825 (1958) (interpreting § 7–802, Burns' 1953 Replacement, predecessor to IC 29–1–14–1)) (emphasis added); *see also Ostheimer v. McNutt,* 116 Ind.App. 649, 652, 66 N.E.2d 142 (1946); *Tinkham v. Tinkham,* 112 Ind.App. 532, 538, 45 N.E.2d 357 (1942).

Here, the debt which Hardin–Cardwell charges could not have been enforced against Kirkendall during his lifetime and could not have been reduced to a simple money judgment prior to his death. Instead, the contract out of which the present appeal arises was executory at the time of Kirkendall's death. An executory contract is:

"one in which a party binds himself to do or not to do a particular thing, whereas an executed contract is one in which the object of the agreement is performed and everything that was to be done is done. The distinction would seem to relate to the legal effect of a contract at two different stages. An executory contract, it is said, conveys a chose in action, while an executed contract conveys a chose in possession."

*2625 Bldg. Corp. v. Deutsch,* 179 Ind.App. 425, 428, 385 N.E.2d 1189, 1191 (1979) (quoting 17 Am.Jur.2d, Contracts, § 6, p. 341). The terms of the purchase agreement required Hardin–Cardwell to make additions and modifications to the parcel of real estate before Kirkendall would pay the $210,000.00 in cash and transfer the deeds to the two vacant lots. At the time of Kirkendall's death, the contract had not been fully executed, as the conveyance of legal title by deed to Hardin–Cardwell and the payment of money was still executory. *See Board of Comm'rs of Madison County v. Midwest Assoc., Inc.,* 144 Ind.App. 264, 268, 245 N.E.2d 853, 855 (1969). As such, there was no failure of consideration and no right of action until *after* Kirkendall died and the Estate had been opened.

Rather, Hardin–Cardwell's claim is one arising out of the personal representatives' conveyance of land in satisfaction of a contract which Kirkendall entered into prior to his death. Such a transfer in real estate falls within the purview of IC 29–1–13–12, which states in relevant part:

"**Contract to convey or lease land.**—(a) When any person legally bound to make a conveyance or lease dies before making the same, the court, *with or without notice,* may direct the personal representative to make the conveyance or lease to the person entitled thereto. A petition for this purpose may be made by any person claiming to be entitled to such conveyance or lease, or by the personal representative, or by any other person interested in the estate or claiming an interest in the real property or contract, and shall show the description of the land and the facts upon which such claim for conveyance or lease is based. Upon satisfactory proofs the court may order the personal representative to execute and deliver an instrument of conveyance or lease to the person entitled thereto upon performance of the contract.

    . . . . .

(b) If a personal representative has been given power by will to make a conveyance or lease, he may, in lieu of the foregoing procedure, and *without order of the court,* execute a conveyance or lease, pursuant to

and in accordance with such power, to the person entitled thereto upon performance of the contract.

. . . .

(c) If the Contract for a lease or conveyance requires the giving of warranties, the deed or lease to be given by the personal representative shall contain the warranties required. Such warranties shall be binding on the estate as though made by the decedent but shall not bind the personal representative personally."

(Emphases added). This statute sets out the procedure to be followed when a person legally bound to make a conveyance or lease of real estate dies before making the same. The clear and unambiguous language of its provisions allows the personal representative to fulfill the contractual obligations of a decedent without notice to heirs, legatees, creditors, or the court.

Because Hardin–Cardwell's claim in the instant case arises out of the alleged failure of an IC 29–1–13–12 real estate conveyance, it is more aptly characterized as a claim against the administration of the Estate. Payment of the costs of administration is given the highest priority when settling claims from the assets of an estate. *See* IC 29–1–14–9. Moreover, as discussed previously, IC 29–1–14–1 specifically applies to "[a]ll claims against a decedent's estate, *other than expenses of administration and claims of the United States, the state, or a subdivision of the state . . . .* " IC 29–1–14–1(a); *Kitchen,* 498 N.E.2d at 47. In other words, of all the types of claims contemplated by the Probate Code, only administrative expenses and governmental claims are excepted from the five-month or one-year time limitation. *Id.*

■ Where IC 29–1–14–1 is inapplicable, the time provisions of IC 29–1–17–13

prevail.[2] IC 29–1–17–13 is very broad and applies to any type of suit against a personal representative by any person. *Villanella v. Godbey,* 632 N.E.2d 786, 790 (Ind.Ct.App. 1994). Accordingly, Hardin–Cardwell could have filed its claim at any time during the administration of the Estate prior to discharge of the personal representatives. The trial court erred in determining otherwise and granting summary judgment in this case.[3]

Reversed and remanded to the trial court for further proceedings.

GARRARD, J., and NAJAM, J., concur.

---

**2.** IC 29–1–17–13 provides: "Upon the filing of a supplemental report of distribution together with receipts of other evidence satisfactory to the court that distribution has been made as ordered in the final decree, the court shall enter an order of discharge. The discharge so obtained shall operate as a release from the duties of the personal representative and shall operate as a bar to any suit including suits by persons under disability, against the personal representative and his sureties except suits which are commenced within in one (1) year from the date of discharge and are based solely upon alleged mistake, fraud or

wilful misconduct on the part of the personal representative."

**3.** The Estate addresses for the first time on appeal the merits of Hardin–Cardwell's claim, advancing arguments under contract theories and the Dead Man's Statute. In the trial court, however, the Estate moved for summary judgment based *solely* on the issue of the timeliness of Hardin–Cardwell's claim. We do not address matters which were not presented to the trial court and to which the nonmoving party did not have a chance to respond.